UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA



| | |
|---|---|
| United States of America *ex rel.* Tamika Allen-Zerwes, and Tamika Allen-Zerwes, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>Dennis Christ and Kevin Christ,<br><br>Defendants. | **COMPLAINT**<br><br>Civil Action No. 12cv1812 DSO/AJB |

## INTRODUCTION

1. Qui tam Plaintiff, Tamika Allen-Zerwes ("Ms. Allen-Zerwes"), brings this action under the False Claims Act (FCA), the Minnesota Human Rights Act (MHRA) and the Minnesota Landlord-Tenant statute. There are four independent claims. First, Defendants intentionally violated the FCA when they knowingly made fraudulent claims to the Minneapolis Public Housing Authority ("MPHA") in order to receive payments through the federally-funded Section 8 Housing Choice Voucher Program.

2. Defendants directly violated the MHRA which protects Ms. Allen-Zerwes from discrimination on the basis of her public assistance status when they required her to sign documents for "side payments" exceeding the Section 8 Housing Assistance Payments Contract ("HAP Contract") amount and retaliated against her when she refused to pay the "side payments."

3. Defendants directly violated the Minnesota Landlord-Tenant statute when they required Ms. Allen-Zerwes to pay them a monthly fee for CenterPoint/Xcel Home Service Plus repair plan for the appliances in the rental unit in an attempt to transfer their obligations under the covenants of habitability which way not be waived.

4. Defendants directly violated Minnesota Landlord-Tenant law by keeping her security deposit and charging her additional amounts of money unjustly and in bad faith.

## JURISDICTION

5. This action is brought under the False Claims Act, 31 U.S. C. § 3729 (2011). This Court has jurisdiction over the federal statutory claim pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 (2011).

6. This action is also brought under the Minnesota Human Rights Act, Minnesota Statute §§ 363A.09 and 363A.15 (2011), Minnesota Uniform Declaratory Judgments Act, Minnesota Statute § 555.01-.04 (2011), and Minnesota Landlord-Tenant law, Minnesota Statute §§ 504B.161 and 504B.178 (2011). This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 (2011).

## VENUE

7. The Defendants reside in or conduct business in Minnesota and the facts alleged occurred exclusively in Minnesota. Accordingly, this claim is properly venued in the District of Minnesota pursuant to 28 U.S.C. § 1391 (2011).

## THE PARTIES AND THE PROPERTY AT ISSUE

8. Plaintiff United States of America is *ex rel.* Tamika Allen-Zerwes.

9. Plaintiff Tamika Allen-Zerwes is a former tenant at 3821 Russell Avenue North, Minneapolis, MN. During the period of time at issue, Ms. Allen-Zerwes received public assistance in the form of rental assistance provided through a Section 8 Housing Choice Voucher.

10. Defendant Dennis Christ owns the property at 3121 Russell Avenue North in Minneapolis, Minnesota ("the Russell property"), a single family home that is not owner occupied.

11. At all times at issue in this case, Defendant Kevin Christ was an agent of Defendant Dennis Christ.

## THE SECTION 8 HOUSING CHOICE VOUCHER PROGRAM

12. The Section 8 Housing Choice Voucher Program, more commonly referred to as "Section 8," is funded through the U.S. Department of Housing and Urban Development (HUD) and is locally administered, in this case by the Minneapolis Public Housing Authority (MPHA).

13. Pursuant to an annual contribution contract, the United States Department of Housing and Urban Development ("HUD") provides federal funds that the MPHA disburses directly to landlords as the rent subsidy for eligible participants in its Section 8 Housing Choice Voucher Program. 42 U.S.C. § 1437f (b)(1) (2011).

14. The amount of rent subsidy paid to the owner through the Section 8 Housing Choice Voucher Program is calculated pursuant to a payment standard set by the

MPHA at levels between 90% to 110% of the rental price of modestly priced apartments in the local market. 42 U.S.C. § 1437f (c) (2011).

15. Tenants in the Section 8 Housing Choice Voucher Program pay at least 30% of their adjusted monthly income for rent. 42 U.S.C. § 1437a (a) (2011). The tenant's payments may, or may not, include utilities depending on the contract between the tenant, the landlord and the MPHA. The MPHA pays the remaining contract rent up to the payment standard maximum, as a Housing Assistance Payment. 42 U.S.C. § 1437f (c)(3) (2011).

16. The MPHA and the landlord enter a HAP Contract that establishes the rental amount for the unit, Contract Rent; the amount the MPHA will pay the landlord, HAP Amount; and the amount the tenant will pay the landlord, Tenant Amount.

## FACTS

### Ms. Allen-Zerwes' Tenancy At 3821 Russell Avenue North

17. In June, 2010, Ms. Allen-Zerwes was living in Carver County in a subsidized housing unit that gave residents like Ms. Allen-Zerwes a tenant-based subsidy through the Section 8 Housing Choice Voucher at the end of their first year of tenancy if they chose to move. Ms. Allen-Zerwes chose to move at the end of her lease and was issued a Section 8 Housing Choice Voucher administered by the Metropolitan Housing and Redevelopment Authority ("Metro HRA").

18. Ms. Allen-Zerwes located the Russell property through rental property listings available on Housing Link.

19. Ms. Allen-Zerwes looked at the Russell property when it was still occupied by the previous tenant. Ms. Allen-Zerwes filled out an application provided by Defendant Kevin Christ.

20. Ms. Allen-Zerwes was told by Defendant Kevin Christ that the Russell property rent was $1,050 a month.

21. Ms. Allen-Zerwes was told by Defendant Kevin Christ that she would have to pay an additional $35 a month "laundry charge" for the washer and gas dryer. This charge in addition to the rent was not optional.

22. Ms. Allen-Zerwes and Defendant Kevin Christ filled out a lease for the Russell property on August 18, 2010. Ex. 1.

23. Defendant Kevin Christ filled in the Request for Tenancy Approval ("RTA") form for the Russell property in the monthly rent amount on the RTA as $1,085. Ex. 2.

24. Ms. Allen-Zerwes signed the RTA on August 24, 2010.

25. Defendant Kevin Christ signed the RTA on August 26, 2012.

26. Carver County CDA received the RTA for Metro HRA on August 27, 2010 as Ms. Allen-Zerwes' request for approval to lease the Russell property using her Section 8 Housing Choice Voucher.

27. On September 10, 2010 Metro HRA prepared papers to transfer administration of Ms. Allen-Zerwes' Section 8 Housing Choice Voucher to Minneapolis Public Housing Authority (MPHA) October 2010 because the Russell property is located in the MPHA's.

28. MPHA confirmed to Metro HRA the MPHA's responsibility for administration of the Section 8 Voucher on Ms. Allen-Zerwes' behalf pursuant to a Housing Assistance Payment Contract (HAP) effective October 6, 2010. Ex. 3.

29. September 20, 2010, the MPHA sent Defendant Dennis Christ a packet of documents to complete in order to schedule the inspection and complete the rental of the Russell property by Ms. Allen-Zerwes with her Section 8 Voucher. Ex. 4.

30. Ms. Allen-Zerwes moved into the Russell property on October 1, 2010.

31. When she moved into the Russell property, Ms. Allen-Zerwes paid $1,085 security deposit; $81 Total Tenant Payment for October 2010, the amount section told her would be her Tenant Amount rent when all the paperwork was completed; and the $35 Defendants demanded as "laundry charge."

32. The Russell property was inspected by MPHA Section 8 on October 5, 2010. Ex. 15.

33. Defendant Kevin Christ completed the Section 8 paperwork the MPHA had sent him, including "Program Essentials for Owner," "Statement of Property Ownership Authorization," and "Tenancy Addendum Certification", on December 10, 2010. Ex. 5, 6, and 7.

34. MPHA sent Defendant Dennis Christ confirmation of the HAP Contract Rent, the HAP Amount from the MPHA and Ms. Allen-Zerwes' Tenant Amount rent payment effective October 6, 2010 in a letter dated January 11, 2011. The total Contract Rent approved by the MPHA was $1,050. The HAP Amount paid by MPHA was $969.

The Tenant Amount paid by Ms. Allen-Zerwes was $81. Ex. 8. The HAP Contract Rent did not include the additional $35 for "laundry charge".

35. The HAP Contract between Defendant Dennis Christ and the MPHA for Ms. Allen-Zerwes' tenancy was executed by Defendant Christ on January 12, 2011. The lease begins October 6, 2010 and ends September 30, 2011. MPHA executed the HAP Contract on January 14, 2010. Ex. 9.

36. In Part B, Section 8. d. of the HAP Contract, Defendants certified that "[e]xcept for the rent to owner, the owner has not received and will not receive any payments or other consideration . . . from the family . . . for rental of the contract unit during the HAP Contract term." Ex. 9.

37. In Part B., Section 7. b. of the HAP Contract, Defendants agreed that "[u]nless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP Contract." Ex. 9.

38. In Part C., Section 5. e., of the HAP Contract, Defendants agreed to "not charge or accept from the family or from any other course, any payment for rent of the unit in addition to the rent to owner." Ex. 9.

39. On information and belief, Defendants had participated in the Section 8 Housing Choice Voucher Program as landlords in other tenancies in addition to Ms. Allen-Zerwes' tenancy.

40. During the time Ms. Allen-Zerwes was a tenant, Defendants knowingly endorsed and presented for payment twelve (12) Housing Assistance Payments from MPHA.

7

41. Despite signing the contracts with MPHA stating that 1) the rent was $1050 and 2) no additional payment for rent would be sought from Ms. Allen-Zerwes, Defendants demanded that Ms. Allen-Zerwes pay additional monthly amounts.

42. Defendants demanded $35 a month from Ms. Allen-Zerwes for "laundry charge" beyond the HAP Contract rent of $1,050.

43. Defendants demanded Ms. Allen-Zerwes sign an "Addenda to lease" August 18, 2010 in which Ms. Allen-Zerwes is required to pay $20.90 to Defendants for CenterPoint/Xcel Home Service Plus repair plan for the landlord-owned appliances. Defendant Kevin Christ wrote $20.90 per month as the amount for this "repair plan" on the "Addenda". Ex. 10.

44. Upon information and belief, the "Addenda to lease" was never provided to the MPHA for approval as part of the RTA. This "Addenda to lease" is not part of the MPHA's file for Ms. Allen-Zerwes Section 8 Housing Choice Voucher Program participation.

45. Defendants billed Ms. Allen-Zerwes demanding $20.90 a month for Home Service Plus Plan. Ex. 14.

46. Almost immediately after she moved in, Ms. Allen-Zerwes reported to Defendant Kevin Christ the gas stove needed repair. Defendants failed to repair it. When Ms. Allen-Zerwes' stove finally broke completely she called CenterPoint to request repair under the Home Service Plus Plan that Defendants billed her for each month. Ms. Allen-Zerwes was told Defendants had no CenterPoint Service Plus for the Russell property.

47. When Ms. Allen-Zerwes asked Defendant Kevin Christ about the Home Service Plus Plan she had been billed for that CenterPoint had no record of, Defendant told her that "I'm your service plus."

48. On July 28, 2011, Ms. Allen-Zerwes sent Defendants a notice of her intent to vacate the Russell property on September 30, 2011 when her lease ended. Ex. 11.

49. The HAP Contract states Ms. Allen-Zerwes is responsible for water, sewer and trash service at the Russell property. Ex. 9. Defendants' "Addenda to lease" requires tenant-paid utilities be in the tenant's name. Ex. 10. However, Defendants refused to have Ms. Allen-Zerwes put the water bill in her name, demanding instead that she pay the amount Defendants would bill her for water service. Ex. 14.

50. When Ms. Allen-Zerwes was near the end of her lease with Defendants, she began the Section 8 paperwork process for a move. At that time Ms. Allen-Zerwes learned from her MPHA Section 8 representative that she should not be paying Defendants any amount beyond her $81 a month Total Tenant Amount. Her Section 8 representative told Ms. Allen-Zerwes she should not pay any utility charges directly to the Defendants.

51. Ms. Allen-Zerwes sent Defendants a letter September 5, 2011 asking for a refund of the $20.90 a month payments for the Home Service Plus Plan. She told Defendants that Section 8 had told her that she should not pay more than the $81 Total Tenant Amount per month. In this letter she also asked for the actual water bills Defendants demanded she pay. Ms. Allen-Zerwes told Defendants that her Section 8 representative had informed her that she should only pay utilities directly to the providers

if the accounts were in her name and not pay the Defendants personally as they demanded. Ex. 12.

52. Ms. Allen-Zerwes vacated the Russell property on September 30, 2011. Defendant Kevin Christ did a walk-through inspection of the Russell property with her. Defendant Kevin Christ did not mention any damage to the property or any item in need of cleaning or repair while inspecting the Russell property with Ms. Allen-Zerwes.

53. Ms. Allen-Zerwes gave Defendants delivery instructions for the return of her security deposit of $1,085.

54. Defendants accounting regarding refund of Ms. Allen-Zerwes' security deposit refund demands payment of $800.25 for rent and water bills that Ms. Allen-Zerwes does not owe Defendants. Defendants also claim $325 for cleaning costs and $68 for damages that Ms. Allen-Zerwes does not owe. Ex. 13.

**Federal False Claims Act**

55. The False Claims Act (FCA) states that it is a violation for any person to "knowingly present . . . a false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. § 3729 (a)(1)(A) (2011). It is also a violation of the FCA to knowingly make or use a false record or statement "material to a false or fraudulent claim." 31 U.S.C. § 3729 (a)(1)(B) (2011).

56. The FCA defines a "claim" as "any request or demand . . . for money or property that is made to a contractor, grantee, or other recipient . . . if the United States Government provides or has provided any portion of the money or property requested or demanded, or will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2) (2011).

57. For each violation of the FCA, the violating party is liable for a civil penalty of not less than $5,500 and not more than $11,000 per instance. 31 U.S.C. § 3729(a)(1) (2011); 28 C.F.R. § 85.3 (2011). In addition, the violator is liable for three times the amount of damages sustained by the United States. *Id.*

58. Any person who violates the FCA is liable for the costs of the civil action brought to recover such penalty or damages, including reasonable attorneys' fees. 31 U.S.C. § 3729(a)(3) (2011).

### Applicable Minnesota Human Rights Law

59. The Minnesota Human Rights Act states that it is an unfair discriminatory practice for any person having the right to rent or lease any real property to discriminate in terms and conditions or privileges because of a person's status with regard to public assistance. Minn. Stat. § 363A.09, subdivs. 1(a), (b) (2011).

60. Status with regard to public assistance means the condition of being a recipient of federal, state or local assistance, including being a tenant receiving federal, state or local subsidies in the form of rental assistance or rent supplements. Minn. Stat. § 363A.03, subdiv. 47 (2011).

11

61. The MHRA also states that it is a violation for any "owner, lessor...or managing agent of any real property ... to intentionally engage in any reprisal against any person because that person ...opposed a practice forbidden under [the Minnesota Human Rights Act]." Minn. Stat. § 363A.15 (2011).

62. Finally, it is a violation of the MHRA to "coerce, intimidate, threaten or interfere with a person" exercising or enjoying their rights under the Act. Minn. Stat. § 363A.09, Subdiv. 6 (2011).

### Applicable Minnesota Landlord-Tenant Law

63. Minn. Stat. § 504B.161 proscribes convenants for every lease in Minnesota. The landlord in every lease covenants that the premises are "fit for the use intended" and to "keep the premises in reasonable repair" during the term of the lease. Minn. Stat. § 504B.161, subdivs. 1, (a)(1) and (2) (2011).

64. Minnesota statue specifically provides that the parties to the lease may not waive or modify the covenants. Minn. Stat. § 504B.161, subdiv. 1(b) (2011).

65. The landlord and tenant may agree that the tenant will perform specific repairs or maintenance only if the agreement is supported by adequate consideration set forth in writing. Minn. Stat. § 504B.161, subdiv. 2. (2011).

66. Minnesota Statute § 504B.178 states that within three weeks of a tenant vacating the property and leaving a forwarding address, a housing provider must return the tenant's deposit or provide a written statement showing why the deposit is being withheld.

67. Landlords may withhold a security deposit for unpaid rent or other lawful monies due to the landlord or if there is damage to the property beyond ordinary wear and tear. Minn. Stat. § 504B.178, Subdiv. 3 (2011).

68. If the landlord withholds the security deposit in bad faith, the landlord is liable for punitive damages not to exceed $500 in addition to the damages. Minn. Stat. § 504B.178, Subdiv. 7 (2011).

**First Cause of Action: False Claims Act, 31 U.S.C. § 3729**

69. Paragraphs 1 through 68 are incorporated herein by this reference.

70. Defendants knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by officials of the United States government, in violation of 31 U.S.C. § 3729 (a)(2) (2011).

71. For each of the 12 months that Ms. Allen-Zerwes lived at the Russell property, Defendants requested a HAP Payment of $969 per month as Rent to Owner from the MPHA in conjunction with its federally-funded Section 8 Housing Choice Voucher Program.

72. Each time Defendants requested payment they agreed to abide by the HAP Contract they had signed with the MPHA.

73. Defendants demanded side payments from Ms. Allen-Zerwes from the beginning of her tenancy. Each time Defendants requested payment from the MPHA they knowingly made a false claim or representation against the United States.

74. Defendants requested payment $969 for each of 12 separate months so they violated the False Claims Act on 12 separate occasions.

13

75. The United States of America suffered damages as a result of the violation of the False Claims Act because HUD disbursed funds to the MPHA for payment to Defendants pursuant to the Section 8 Housing Choice Voucher Program HAP Contract on behalf of Ms. Allen-Zerwes that would not have been disbursed absent Defendants' false claims and misrepresentations.

**Second Cause of Action: Reprisal and Interference, Minn. Stat. § 363A.09, subdivs. 1 (a) and (b) and 6 and Minn. Stat. § 363A.15**

76. Paragraphs 1 through 68 are incorporated herein by this reference.

77. Defendants entered into a HAP Contract with the MPHA for the tenancy of Ms. Allen-Zerwes agreeing to accept only $1,050 a month for total Contract Rent for rental of the Russell property.

78. Despite signing the HAP Contract, Defendants demanded that Ms. Allen-Zerwes pay amounts above the rental amount in the HAP Contract.

79. But for the fact of Ms. Allen-Zerwes receiving public assistance in the form of a Section 8 Housing Choice Voucher, Defendants would not have required additional payment requirements.

80. But for her refusal to pay these side payments, Ms. Allen-Zerwes would not have been threatened with eviction for failure to pay by Defendants.

81. But for her refusal to pay these side payments Defendants would not have withheld refund of Ms. Allen-Zerwes' security deposit.

82. By requiring Ms. Allen-Zerwes to pay amounts in addition to rent, Defendants required different terms and conditions of tenancy due to her status with

regard to public assistance in violation of Minn. Stat. § 363A.09, subdivs. 1 (a) and (b) (2011).

83. Defendants interfered with and retaliated against Ms. Allen-Zerwes by keeping her security deposit after she refused to pay the illegal side payments demanded by Defendants.

84. Ms. Allen-Zerwes paid her Total Tenant Amount of the rent while living at the Russell property. Therefore she did not owe $800.25 for "Past Due Rent and Water Bills".

85. Ms. Allen-Zerwes did not damage the Russell property. Therefore, she did not owe $68 for damages.

86. Ms. Allen-Zerwes left the Russell property clean. Therefore, she did not owe $325 for cleaning charges.

87. Defendants retention of her security deposit and baseless charges were retaliatory and therefore in violation of Minn. Stat. §§ 363A. 09 Subdiv. 6 and 363A.15 (2011).

### Third Cause of Action: Violation of Covenants of Habitability, Minn. Stat. § 504B.161.

88. Paragraphs 1 through 68 are incorporated herein by this reference.

89. The covenants of habitability in Minnesota Landlord-Tenant law require that Defendants provide the rented premises fit for the use intended and keep the premises in reasonable repair during the term of the lease. Minn. Stat. § 504B.161, subdivs. 1 (a)(1) and (2) (2011).

90. The statutory convenants of habitability may not be waived or modified. Minn. Stat. § 504B.161, Subdiv. 1 (b) (2011).

91. Defendants' "Addenda to lease" attempts to shift their obligations under the statutory covenants of habitability to Ms. Allen-Zerwes.

92. Defendants collected amounts in excess of Ms. Allen-Zerwes' Total Tenant Amount for alleged purchase of Home Service Plus Plan for repairs of Defendants' appliances.

93. Defendants never purchased Home Service Plus Plan repair services for their appliances at the Russell property.

94. There was no adequate consideration set forth in writing, as required by Minn. Stat. § 504B.161, Subdiv. 2 (2011), to support any of Defendants' attempts to shift their legal obligations as landlords to Ms. Allen-Zerwes.

95. Defendants knowingly violated Minn. Stat. § 504B.161 (2011) by trying to waive or modify their obligations under the statutory covenants of habitability through collecting "side payments" from Ms. Allen-Zerwes to pay for their obligations.

### Fourth Cause of Action: Bad Faith Retention of Security Deposit, Minn. Stat. § 504B.178

96. Paragraphs 1 through 68 are incorporated herein by this reference.

97. Defendants violated Minnesota Landlord-Tenant law when they refused to return Ms. Allen-Zerwes security deposit.

98. Defendants withheld the security deposit in knowing violation of the statute.

99. Ms. Allen-Zerwes paid her rent pursuant to the Section 8 Housing Choice Voucher requirements and the HAP Contract in full. No rent is unpaid.

100. Defendants required Ms. Allen-Zerwes put tenant-paid utilities in her name in the "Addenda to lease". At the same time, Defendants required that the water services account with the City of Minneapolis remain in their name.

101. Defendants did not present Ms. Allen-Zerwes with monthly copies of the City of Minneapolis water department bill for services at the Russell property.

102. Ms. Allen-Zerwes did not see actual copies of City of Minneapolis water bills for the Russell property until September 2011 after she informed Defendants that her Section 8 representative had told her payment of any utility bills that were not in her name were illegal "side payments" that Ms. Allen-Zerwes was not allowed to pay. No water bill payments are due from Ms. Allen-Zerwes.

103. Defendants Kevin Christ inspected the Russell property with Ms. Allen-Zerwes when she vacated and noted no damages, no needed repairs and no needed cleaning.

104. Defendants withheld Ms. Allen-Zerwes' security deposit in bad faith in violation of Minn. Stat. § 504B.178.

**RELIEF**

WHEREFORE, Plaintiff Tamika Allen-Zerwes and the United States of America respectfully request relief:

1. Find that Defendants violated the False Claims Act and are liable to the United States of America;

2. Find that Defendants violated the Minnesota Human Rights Act;

3. Find that Defendants violated the Minnesota Landlord-Tenant statute;

4. Assess a civil penalty between $5,500 and $11,000 pursuant to 42 U.S.C. § 3729 (a) (2011) against the Defendants for each separate violation of the False Claims Act;

5. Award the United States, pursuant to 42 U.S.C. § 3729 (a) (2011), the damages that it sustained as a result of the Defendants' acts;

6. Award Ms. Allen-Zerwes the qui tam Plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730 (d) (2011);

7. Award Ms. Allen-Zerwes punitive and compensatory damages as allowed under Minn. Stat. § 504B.178 subdivs. 2 and 7 (2011);

8. Declare, pursuant to Minn. Stat. § 555 (2011), that Defendants' lease documents' provisions and billing practices regarding CenterPoint/Xcel Home Service Plus Plan violates Minn. Stat. § 504B.161 (2011) and enjoin Defendants from including and enforcing those provisions in any rental agreements in Minnesota;

9. Award costs and reasonable attorneys' fees to the United States pursuant to 42 U.S.C. § 3730 (d) (2011);

10. Award costs and reasonable attorneys' fees to Ms. Allen-Zerwes pursuant to U.S.C. § 3730 (d) (2011) and Minn. Stat. § 363A.33, subdiv. 7 (2011); and

11. Such other relief as the Court finds just and appropriate.

**MID-MINNESOTA LEGAL AID**

Dated: *July 25, 2012*         By: *Dorinda L. Wider*
Dorinda L. Wider
Attorney ID #162334
430 First Avenue North, #300
Minneapolis, MN 55401-1780
(612) 746-3762

Attorney for Plaintiff Tamika Allen-Zerwes

1109-0324237-973756.docx